We'll turn now to 22-1702, Lopez-Munoz v. Garland. Good morning, Your Honors. May it please the Court? Okay. Marina Alexandrovich for the Petitioner. There are two issues presented. First one, I would like to answer with yes, that in reasonable fear proceedings, due process requires an opportunity to be put on notice and an opportunity to be heard. But our cases hold that, at least on that second part, that there is no opportunity to be heard required in this posture before the IJ. Well, though the review of the negative reasonable fear finding by the officer is quite an abbreviated one by the IJ, by the immigration judge. But still, Your Honor, we're not talking about the introduction of the new evidence, which would be indeed optional, because IJ may, but is not required to accept new evidence. We're not talking about that. We're talking about the testimony that has been taken and allowed by the IJ. In this particular case, Your Honor, it is significant that the asylum officer actually found the applicant, the petitioner in this case, credible. Page number 59 of the Record of Proceedings. And then the judge specifically elicited petitioner's testimony before him. He heard him. And after his defense attorney at that time made an argument, rightly so, basically she said, my client's testimony is consistent. He is credible because she was relying on the finding by the asylum officer. Well, by surprise, petitioner was taken when the judge said in his conclusion, he said, I found you not to be credible. And then the judge goes on and basically rests the entire his decision in his entirety on the adverse credibility finding. I was going to ask you about that. Let me. This is a good time to. The asylum officer said, I find you credible, but I don't think you've established the requisite probability of future persecution or the requisite probability of future torture. Correct? That is correct. And then the IJ says, I don't find you credible, but then goes on to say, and I agree with the asylum officer. There's not there's no credible evidence to support your fear of a fear of torture or persecution. So my question is, wholly apart from the credibility finding, didn't the IJ affirm the notion that the AO had found that there simply wasn't credible or not? There simply wasn't sufficient evidence in this record to meet the fear requirements, the probability of persecution or torture. Well, good question, your honor. Thank you. Well, in my opinion, not the the the judge was not clear enough. She was quite vague. Well, but I know that it was vague. He said what he said was that the they find that there's not sufficient, credible or consistent testimony. And that's after he said that it wasn't credible. So he didn't say there wasn't sufficient evidence, even if it was assuming it was credible. He said that's not sufficient, credible testimony. So it seems to me that he he was eliminating. Well, but that that takes me back to, I guess, what your client said in front of the IJ. Did he say anything in front of the IJ, which even if believed would would establish a fear of future persecution? I believe so. Your Honor, let me take you back to page number 60 of the record of proceedings. The asylum officer did establish the past torture. And part of that finding, he established that the entity that harmed the applicant, the applicant is a public official or other person acting in an official capacity. So, in other words, the petitioner was very close in a sense for to be able to establish a reasonable possibility. The asylum officer only found that, unfortunately, there is no presumption that the past torture, there is no presumption from the past torture to the future torture. But the asylum officer did not have any doubts, at least, that he suffered the past torture at the hands, at least, of the government or the government officials. Now, basically, the asylum officer denied. He said, well, at the end, there is no significant possibility. There is no reasonable possibility that the Zeta cartel at this time, as prolific as it used to be. And the asylum officer said also, well, listen, also, there is not sufficient evidence or reasonable possibility that you cannot reasonably relocate in the country to be safe. So, the judge did not even focus on these factors. Did you preserve the torture issue, for example? How did you preserve that for our review? Well, the torture, the past torture, indeed, does not give a presumption to the future torture. It's a different standard. There's no argument before us. I guess the problem is the due process claim requires some showing of prejudice. And we don't have any of the other findings necessary to support the petitioner's claim in this case. We've just got this question about the credibility. So, how are we to find any prejudice to the petitioner if there were a violation of due process to these credibility issues? Well, if the judge would have allowed respondent petitioner to explain himself, right, petitioner could have explained the inconsistencies quite easily, perhaps, and to the satisfaction of the IJ. Secondly, his attorney at that time, she could have had a bill done that and then further proceed with arguments. So, she was not even prepared for that. How does the system operate? If there's an IJ hearing where he accepts evidence, does that mean that the whole case has to be put on before the IJ? Or does it mean that the evidence that was given to the asylum officer is assumed to be evidence plus whatever else is added before the IJ? In other words, is evidence that isn't specifically and separately presented before the IJ no longer in the case? That's true when you're dealing with an ordinary removal case, but is it true in this instance where the IJ hearing is sort of optional? So, is it optional about does it have to be comprehensive or can it be partial? Well, it's a de novo review by the IJ. It is de novo review? How do we know that? But it's a de novo review of what? De novo review of the evidence before the asylum officer and whatever else comes in before the IJ or only what comes in before the IJ? Well, first of all, IJ can review whatever was presented before an asylum officer. And then at the option of the IJ, he may, he may not accept new evidence. So, if the petitioner doesn't put on before the IJ some evidence that did come out before the asylum officer, is the evidence that came out before the asylum officer also before the IJ? Yes. Right? Yes. I guess I had a slightly different question. I mean, the IJ in AR1 finds that there's not sufficient evidence testimony on persecution, torture, et cetera. It denies the entire claim on the merits. And I guess my question is you haven't challenged any of those findings either. And again, in a different posture, as Judge Berzon suggests, we typically require you to give us a chance to figure out why this would make any difference to your petitioner's claim. And you haven't challenged it in your briefs. I understood you want to. But again, the respondents suffered, the petitioner suffered the prejudice in this case because should IJ allow him, explain himself, or at least put him on a notice prior to making a decision, the outcome could have been completely different. The IJ could have reversed the decision. I'm sorry, the Zoom lets us talk over each other. Had you finished? I want to ask you a question. Yes. Our cases say that while confronting somebody with inconsistencies is the rule, there are exceptions. And so when the inconsistencies are so stark or so clear, in this case, that's one of the exceptions. In this case, your client enters the United States three times before this one. And at no point, all after the events that he claims form the basis for his fear, at each time says, I've got no problem going back to Mexico, never claims the fear. What would he have said, could he have said, if the IJ had said, gee, every other time you entered the country illegally and were caught, you said, I've got no fear of return. Now, 14 years after, or some point after, now over a decade after, anyway, you claim a fear of return. I don't believe you. Tell me why you never said this before. What could he have said to overcome the notion that when asked specifically by immigration officers each time before whether he had a fear of return, he said no? At least two things he could have said. Number one, that the immigration official did not ask him whether or not he had a fear to return. So his position would have been that their statements that they did were lies? Sometimes the officers did not ask, yet they still put in the paperwork that this question has been asked. It's not unheard of. Secondly, new circumstances. Petitioner, while talking to the judge, he actually tried to explain to him that his brother, quite recently, a year and a half ago, I think that's what he put, had been murdered or set on fire by the cartel, basically implying that now his fears are greater and reinforced due to what recently happened to his brother. The asylum officer did ask him some questions about possible contradictions. Did she ask him about this, about the 2011 statements? I think she only asked him about the 2022 statement that the immigration official said he said he had no fear of return. I don't think she asked him about the 2011. Is that right? I believe so, Your Honor. Ms. Aleksandrovich, again, I guess going to the prejudice, I mean, there's no finding here of a particular social group of nexus. All you've got is the past torture finding, but no finding of torture finding, and none of those are challenged before us, and none of them were challenged before the IJ, which was your one opportunity at review of the reasonable fear finding. Well, Your Honor, before IJ, it was a different attorney, and I think she preserved arguments in all aspects. At the minimum, in this case, what could have been done is the cat claim, basically. The possibility that the petitioner would be tortured, more likely than not, if he goes back to the country. And for the cat part, she doesn't need to show the protected group. Where's that in your brief? I'm sorry. I guess I'm trying to understand, again, how this issue is preserved before us. And I'll follow up on that. Is prejudice, ordinarily, I mean, this is such a strange procedure. Ordinarily, if the IJ makes a credibility finding and doesn't ask the person to explain the contradictions, we don't look for prejudice, right? We send it back and say, make a credibility finding. I mean, that's absent the notion that he did make a finding without the credibility finding, but I don't read it that way. So if there's no alternative finding, in the ordinary sort of case we see, we don't look at prejudice. We look at, isn't that right? We look at, because we review what they actually found. And if what they actually found was the reason why, that you're not credible and therefore we're finding that there's no past persecution or whatever, we don't do it ourselves and figure out whether there was prejudice. Is this a different, again, is this different context? You want to lay, or is this has to be through due process? And because it's through due process rather than through a regulatory developed procedure as such that because it's due process we look at prejudice? Or are there two different things going on? Where are we on that? Due process, Your Honor, I believe. So you think that the only basis for the requirement that he should have confronted the person is a due process, and therefore prejudice is an appropriate consideration? That's my argument, Your Honor. Well, the last question comes off Judge Berzon's question. So the relief you're seeking is for us to send this back to the IJ? That is correct. To let him, let your client confront the inconsistencies in the record and try to explain them? That is correct. And perhaps to introduce, at least to petition the IJ to introduce a new evidence. Well, see, that's what I was asking. It seems to me your complaint is that you didn't get the ability to confront the inconsistencies. It seems to me that will be remedied by sending it to the IJ to allow you to confront the inconsistencies. Be up to the IJ whether he let more evidence in, but I'm not sure why we should tell the IJ to let you, give you a second shot at putting evidence in. Well, it's because he, the IJ did not provide an opportunity, a petitioner in the first place. And again... Well, see, but that's where Judge Berzon's question at the beginning interests me. The IJ didn't have to let you put any evidence in. The IJ said, if you want to testify, testify. And that's a perfectly, he doesn't have to say, if you want to testify, I have to take a bunch of other evidence too. So you let your guy testify. He didn't find him credible. Your only complaint is that he didn't tell him why he didn't find him credible. So it seems to me we remedy any prejudice, if there was any, by simply sending it back to the IJ and say, make findings as to why he wasn't credible. And let him confront those and argue why they're not accurate. But I'm not sure that we're entitled to say, well, start all over again. But in any event, I know what you want. Well, if I may add, the judge did not make it optional. It seems like he just proceeded to swear the petitioner to give a testimony. And because he's done so, in a way, he let the cat out of the bag. I mean, by allowing responsibility. So by allowing him to talk, you think he has to take, he's now opened the entire proceedings to evidence that your client didn't see fit to put in the first time, but several years later might see fit to put in? Only the testimony. Only the testimony. But it also wasn't that he didn't see fit. He did see fit. I mean, he said, you know, I have this. I have these photos. I have scars. I have, you know, if you let me do it, I could do it. So he did bring it up at that point, the other evidence that he wanted to put in. So I have one last question. Again, I said I lied. I do have another question. On remand, could the IJ say, you're right. I never should have let testimony in in the first place. I won't make any credibility findings based on that. I'll just review the IJ, the AO's findings on the record and make a determination. I believe so, yes. Okay. Thank you. All right. Thank you, Ms. Aleksandrovich. We'll give you a couple minutes for rebuttal. Ms. Agner. May it please the court, Jacqueline Agner on behalf of the Attorney General. The court should deny the petition for review. I'll turn first to the due process issue that we've been discussing. Now, is it your understanding that this is only a due process issue? I mean, the way you brief it, I mean, my understanding is that in the instances in which we, this requirement of confrontation has originated, I did not understand it to be an extra statutorial requirement. It is part of the understanding of what's an appropriate credibility finding and not necessarily grounded in an external due process requirement. Is that right? I think I agree. In a removal situation. I think I agree with you, and I think that you're correct. That's how we briefed it. We briefed substantial evidence in terms of the adverse credibility determination, and then we addressed any due process claims. If that's the case, if that's what we're doing, then is there a prejudice requirement, or do we just send it back if it doesn't done right? Right. So if the court turned to the adverse credibility determination, I think I agree with you that there's a finding by the court that substantial evidence does not support the adverse credibility determination. Because there was no confrontation if we think that's necessary. Okay. Then what? Right. Unfortunately, I think that actually inserts a due process issue, and at that point you need prejudice. I think that. That's what I was asking you. I thought you briefed it extraneous to any due process requirement. Right. So I think there's a distinction, Your Honor, between remanding for lack of substantial evidence versus remanding because you didn't follow the law immigration judge, and you violated due process. That's the way I look at it. Well, where does the requirement of confrontation come from? Not confrontation in the sense of the Sixth Amendment because he was there, but confrontation in the sense of telling the applicant, I find these inconsistencies. I want to give you a chance to explain them. If I can use that as confrontation as a short term. In removal proceedings, it's statutorily based. There's apparently something that requires the asylum officer to do that because it's on the form, and it's in the manual. The asylum officer is told before finding somebody not credible, you should give them a chance to explain why. I'm trying to figure out if there's a requirement other than due process that requires this confrontation in the IJ's review. Because in removal cases, we cite the statute. The statute says so. Correct, Your Honor. That is precisely the issue here. There's just no statutory requirement to confront with. So is it your view that the statutory requirement applicable to removal proceedings is not applicable to reasonable fair proceedings?  Why is that? Just pure statutory language, Your Honor. The statute doesn't say, does it, that you have to confront them if there's an inconsistency. It just says you have to make a credibility finding that's supported by the evidence. And the case law has developed a requirement that you need to confront them. Is that not true? Is there something in the statute that says it? Yes, Judge Berzahn. I agree with what you said first of all, which is that you don't have to directly say to the petitioner or the non-citizen at that point, I think you are inconsistent on this point. Please explain to me what your difference is. As this court has held in many cases, this confrontation can be brought to light in many different forms. For instance, on cross-examination or by your own counsel. And that was actually what happened here. The immigration judge asked petitioner's counsel, would you like to ask any questions of your client at the end of the proceedings? That right there was an opportunity to confront the inconsistencies. If you wanted to go down the road, which was not required to be provided. Bottom line, are you arguing that this confrontation requirement is different in the removal proceedings than in this proceeding? And in what way? I think so. I think that's what we're arguing. I think I understand your question, which is that if we were in removal proceedings, I think this court's law is very clear that any basis for the immigration judge's adverse credibility determination with inconsistencies in some form or fashion has to be flushed out on the record. Meaning that the IJ has to say, you know, I'm bothered by this contradiction, explain it. Correct. Not simply that you can just not tell anybody that you're bothered by it and then bring it up at the point of the decision. Correct. And I just want to add, or counsel can bring it out. Either way, as long as it's flushed out on the record. All right. And is your position that that is not true in this instance? Right. So in the reinstatement proceeding. Why? I don't know. There's simply. Well, I think that. So there's simply no regulation or statute to begin with. Let's go back to what I asked you the first time. Is there anything in this statute as to removal procedures that establishes this? Or is it case law? Ms. Hagner, isn't it 1158B, the totality of the circumstances? We have quite a few cases after the Real ID Act where we note that I think that our credibility rules and provide an opportunity to respond, that we have kind of regrounded that in the Real ID Act in 1158D, which requires that credibility of determination considers the totality of the circumstances, and that that then requires the opportunity to respond. 1158D only applies to asylum, I believe. But it's not specific is my point. Right. Even that is an additional gloss on the statute. We've read it into. Right. I guess maybe we're getting a little far afield. As I read the briefing in this case, only a due process claim is raised. Am I incorrect? That is my understanding, Your Honor. There's no statutory or regulatory, no claim that a statute or regulation was violated. The only claim is that the due process clause was violated. And so explain, if you would, why. And some of our cases say that due process may require it in some circumstances, even in removal proceedings. So tell me why you don't think due process required that confrontation here. Right. So I think that, as this court has unequivocally held, that in reasonable fair proceedings, the reasonable fair regulations do comport with due process. I think that's our baseline. I'm sorry. I didn't hear that. And comport with due process. Alonzo Juarez is the most recent case, but Alvarado Herrera and Bartolome are frequently cited as well. Those cases have specifically examined these regulations and whether or not they comport with due process. And unequivocally, each time this court says yes. Now, diving into that, the court each time has said that the de novo review sort of remedies any due process concerns here. And I think that Petitioner's counsel was correct in saying that notice and opportunity to be heard is what this court should be concerned with. Was Petitioner, in this case, provided a notice and opportunity to be heard? By the NJ or by the asylum officer or both in combination? Ultimately, the immigration judge, I think, is paramount. I'm sorry, is what? It's paramount. I think that this court needs to be concerned. Did the immigration judge provide Petitioner with notice and opportunity? Well, that's the question. And if the asylum officer record doesn't matter, I mean, what happened here was, first of all, the petitioner said, I know I have this evidence. I wish I could bring you and you didn't care about that. And then he was in detention. It was very soon. He offered to get this other evidence. And second of all, when the IJ began making these credibility findings based on things he hadn't mentioned before and the petitioner said, can I say something? The IJ said no. That's a strange kind of due process. Actually, I disagree with you, Your Honor. And I think that I see my time is about to expire. My summation actually addresses your direct question. But before you, I guess, after you answer Judge Berzon's question and before you do your summation, could you speak to the prejudice question since we don't have any other elements of withholding presented before us? Right. So prejudice needs to be established before remand. That's our position. And there has simply been no proffer of prejudice. Before this court today, opposing counsel mentioned that she remanded because she can now explain why he told immigration officials that he had no fear. That is a proffer from counsel. That is not evidence. We're assuming that that's what would happen. And assumption simply does not rise to the level of establishing prejudice before this court. What do you do with the IJ's decision, and I admit it's ambiguous, when he says, I agree with the asylum officer because there's not enough sufficient credible or consistent testimony or evidence to show, et cetera, et cetera. Is he saying, and I think that's what the asylum officer found. There wasn't sufficient evidence to show that. Is he agreeing with his finding, or is he saying, I only agree with him because I found you not credible today? It's susceptible of either reading, I think. What's your view? Right. Judge Horwitz, I'm glad you brought that up. So I think that to help clarify for the court, I think what is automatically off the table at this point is withholding of removal. That withholding of removal was found, essentially, the IJ found no nexus. And so did the asylum officer. Yeah, and that's my question. Do we view the asylum officer's affirmance, if you will, agreement with the asylum officer as encompassing all of his findings or only the ones he mentions? Right. So I think only the ones that the immigration judge concurs with. Does that answer your question, Your Honor? Well, so how do we know that he's agreed with his finding of no nexus? I believe the immigration judge stated that he did not. He does say by any. You're right. He says by any government official, not with the knowledge or acquiescence. OK. Now I see where it's. OK. With regard to the nexus question, there was. The credibility difference might well not matter because was there any evidence credible or not credible before the IJ of a nexus? Right. And that's my point is that the credibility findings actually did not permeate the nexus finding. But as to the cat claim, it would. My reading of the decision, yes, it would. I think that basically it was government acquiescence and credibility went hand in hand. But that was not the case with with the nexus issue. I guess. But then I want to go on to. He says. That you would be persecuted or tortured in Mexico by any government official. Buyer with the knowledge of a public official or by. So what was the why was the testimony before the IJ relevant? How did it establish anything with respect to the likelihood of government torture or acquiescence? I don't think it did. I think that was the problem is the immigration judge actually found him to be inconsistent on. Well, I guess I'm trying to ask this. I may not be clear in my question, so I want to be clear on it. The IJ says something here. Whatever he says, it seems to agree both with he seems to agree with the asylum officers nexus finding. And also with his non acquiescence. Or or direct participation finding with respect to torture. So I'm trying to figure out whether or not his discounting of Mr. Lopez's credibility made any difference with respect to those findings. Since as I read the hearing transcript, he didn't seem to offer any evidence with respect to nexus or nexus. And for withholding or or direct participation or acquiescence on the torture issue. Right. I think I I think I understand your honor's question, which is basically, can the credibility aside, was there a finding that there was no government acquiescence? Is is is that your question? Yeah. The IJ made that finding. The government made a fine. I mean, sorry, made a finding that you haven't shown. Even if I find you credible, you haven't shown sufficient evidence of acquiescence at the withholding stage or at the torture stage, direct participation or acquiescence or consent. The IJ repeats that language and says you have. I agree with the asylum officer. You haven't shown that. And so I'm trying to figure out whether or not even if if I'm trying to figure out what the effect of the credibility finding at the IJ stage would have on those what I call the government participation parts of both both withholding and and and cat protection. Because I don't I didn't read Mr. Lopez's testimony going to those issues. It just it was explaining why why he really feared going back now because the Zetas had done something to his brother and and explaining why he had a fear. But it didn't go to those those things, did it? Right. So I'm looking at the IJ decision right now, Your Honor. And it says there's no sufficient, credible or consistent testimony or evidence to show government acquiescence or to torture. Yes. And that's my question is, since the focus of this case is about the adverse credibility finding that the IJ made. If he hadn't made the finding, was there anything in Mr. Lopez's testimony that went to that issue? Well, if you know, I don't believe so. I didn't think so. But I was. That's why I thought. And I could be confusing with another case that with regard to acquiescence in his story about what happened to him, weren't the police involved? Right. So he actually I actually think this is actually really helpful. He did. So he tells both the asylum officer and the immigration judge that he reported in 2005 to the police. Did he also say that the police actually delivered him to the to the cartel? Correct. And this actually is an inconsistency. So isn't that acquiescence? So that if you believe it, you'd have to find acquiescence. Right. The only problem is that he provided two completely different versions. But that's that's credibility. But as to if you believed him as to being delivered to the police, then there is evidence of acquiescence. I guess so. I guess I would agree with you, Your Honor. I guess I just struggle because I wouldn't know what to believe. But that's a different problem. Right. Right. Now, I think your stronger ground may be on the relocation point. Right. And the asylum officer, as I recall, relied mostly on that. Yes. Yes. The credibility was not yet an issue before the asylum officer. I know credibility wasn't. But was acquiescence or was her her main finding as to Kat based on and I'm not sure about this, based on. On whether he could relocate. Right. So it was significant for Kat. It was significantly based on the country conditions and relocation. So was so to repeat, it was it was his question, but in a different context slightly. Was there any evidence as to whether he before the IJ as to whether he could relocate? That was discounted. And was there any evidence believed or not believed? I don't believe so. I don't know the answer to it. I don't I mean, I don't think I think I think petitioners said that he could not relocate or. Right. So I'm reading it right now. Right. I think that he he basically did not say that he could not relocate. And that's what the asylum officer found. And the asylum officer did all this country conditions research and saw that the Zetas cartel is no longer. That's that's what's so strange about this procedure. You may have done that research, but there's nothing in the record. So what do we do with that? So your point, Judge Berzon, is that that all that country conditions evidence is not in the record. I mean, it's just the asylum officer says this. So why don't we review that? Right. I think that's just the nature of the proceedings. So the proceeding. I mean, this is a proceeding in which the asylum over can rely on evidence that that the petitioner doesn't know anything about. And then he can go to the IJ and he can say, I have some evidence I'd like to put on and the IJ can say no. It's a very I mean, where is all this coming from? I mean, I mean, it's a strange form of due process in which somebody says, you know, I have photos and the IJ says I don't care. And I'd like to say something about what you just said about why I'm not credible. And he says, no, you can't. Right. And so I would like to answer your question. And again, I will say my my answer to your question is actually my summation. And I see my time is far expired. So I will go ahead and answer your question, Judge Berzon. And that is that I think as this court walks away to decide this case, I think it is really important to focus on the sequence of events of what happened during these proceedings. And that is first, number one, petitioner testified something that he was not entitled to. But the immigration judge afforded him more than what he what he was entitled to. After he testified, the the immigration judge turned to counsel. Again, he had counsel during these proceedings. Counsel who received a continuance, a five day continuance to prepare for the proceedings. Right. So there's due process right there. And then the immigration judge says to his counsel, would you like to ask any questions? That was counsel's opportunity to go ahead and explain all those statements that he made to the immigration officials. And other inconsistencies in the record that counsel received five days to prepare for and plan for. Next, after the counsel declines to ask any questions, counsel then provides argument. After argument, the immigration judge then gives an oral decision, essentially describing why he found petitioner not credible. Only at that point is when petitioner said, can I say something? What I mean, in other words, what's important here is petitioner's testimony was never cut off. This is after testimony concluded. This is after opposing counsel or petitioner's counsel's provided an opportunity to ask questions. After argument and after the decision, that's when petitioner stood up and asked to say something. That is a really fine distinction for this court that he was not cut off mid-sentence. This wasn't an unfair dialogue between the immigration judge and petitioner. This is after the proceedings have concluded. So for that reason, I will just leave in my last sentence here is that his attorney was supposed to ask him. Why did you say in 2010 that you weren't afraid to go back to Mexico or 2011, even though nobody had ever brought it up? Yes, Your Honor. I believe that. I think that when you're in proceedings like this and you know the evidence against you, and you're trying to establish eligibility for withholding of removal, I think it is now you have to explain to the immigration judge why on several occasions you have lied to immigration officials. And in any other inconsistencies, this is your one opportunity. I think that's what needed to be done here. Thank you, Ms. Wagner. You can sum up. Thank you. For the foregoing reasons and the reasons in response to answering your brief, we ask that you deny the petition for review. Thank you. Thank you. Ms. Aleksandrovich, two minutes. I'd like you to start on prejudice. The government's final argument is that there's nothing in your brief regarding nexus, acquiescence, or relocation. Do you agree with that? And what are we to do with that? Yes, Your Honor, because the acquiescence was not an issue. Again, it was not an issue in the asylum. How about relocation? Relocation, it was an issue. That is correct. However, that was not developed during the review hearing before NIJ. I'm shuffling through the testimony before the IJ. There wasn't any evidence presented about relocation, correct? No, Your Honor. My reading, I read it again. And that would be, in the torture context, it would be the petitioner's burden. Yes, Your Honor. Relocation would be a burden. And the asylum officer had already relied fairly heavily on the relocation issue. Yes, Your Honor. However, again, asylum officer referred to the contrary reports that are not in evidence. And the asylum officer basically connected it to the fact that the Zeta cartel is no longer as prolific. And where did you make that argument in your briefs before us? Well, if it's not there, Your Honor, it's not there. I have not. As to prejudice, though, Your Honor, again, I disagree with it. But that is the prejudice point, right? I mean, that's a central point regarding prejudice. Because if the relocation determination was correct, then there's no prejudice. And it doesn't have anything to do with credibility, because they didn't say anything about it. Yes, Your Honor. That would appear to be essential part, the relocation to the cat, at least part of that. However, still, the due process is essential in this proceedings as well. And then we kind of go back to the same issue that the petitioner could have given an opportunity to explain himself. And it could have changed the entire result. My understanding is that you have agreed during this hearing today that this is a due process ruling and that prejudice is relevant. And that there was no prejudice with regard to the nexus issue or the relocation issue. Because there was nothing said at the hearing regarding them. And therefore, the credibility determination was not pertinent to that. So I don't know where we are at this point. Well, the credibility would be pertinent. Why? As to things he'd ever said? Because in a way, it's the fruit of the poisonous tree. The judge found him to be not credible, and it affected the judge's review. Well, but the AO found no nexus and therefore no withholding and found relocation, among other things, and found that your client could relocate and therefore wasn't entitled to cat protection. Your client's testimony, which was not found credible in front of the IJ, doesn't relate to either of those issues, does it? It does not. Okay. I just wanted to be clear on that. Okay. Do you have anything to close, Ms. Aleksandrovich? No, Your Honor. Okay. Thanks to both counsel for your time. That case will be submitted.
judges: BERZON, HURWITZ, JOHNSTONE